AMERICAN STATE BANK OF WILLISTON and First National Bank & Trust Company of Williston, Appellants,

v.

STATE BANKING BOARD of the State of North Dakota and Williston Basin State Bank, Appellees.

Civ. No. 9681.

Supreme Court of North Dakota.

Feb. 14, 1980.

Bjella, Neff, Rathert & Wahl, Williston, for appellant American State Bank of Williston; argued by Fred C. Rathert, Williston.

Rolfstad, Winkjer, McKennett, Kaiser & Stenehjem, Williston, for appellant First Nat. Bank & Trust Co. of Williston; argued by Richard A. McKennett, Williston.

Allen I. Olson, Atty. Gen. and Illona Jeffcoat-Sacco, Sp. Asst. Atty. Gen., Bismarck, for appellee State Banking Bd. of the State of North Dakota; argued by Illona Jeffcoat-Sacco, Sp. Asst. Atty. Gen., Bismarck.

Vogel, Brantner, Kelly, Knutson, Weir & Bye, Fargo, for appellee Williston Basin State Bank; argued by Kermit Edward Bye, Fargo.

PAULSON, Justice.

■ The American State Bank of Williston and the First National Bank and Trust Company of Williston [hereinafter referred to as "American State Bank" and "First National Bank", respectively] appeal from a judgment of the Burleigh County District Court affirming a decision of the State Banking Board [hereinafter the "Board"] granting a new bank charter to the Williston Basin State Bank. The appeal from the decision of the Board is governed by the Administrative Agencies Practice Act, Chapter 28–32 of the North Dakota Century Code. We affirm.

On April 17, 1978, the State Department of Banking and Financial Institutions received an application for a proposed Williston Basin State Bank to be established as a full-service commercial bank in Williston. The statutory requirements for notice were complied with [1] and a hearing date was set. The hearings on the application of Williston Basin State Bank were held in conjunction with hearings on the application of Williston State Bank, another proposed Williston area bank. The Williston State Bank application was received on April 7, 1978. Public hearings were held in Bismarck regarding the two new bank applications for Williston on August 28, 29, and 30; September 27 and 28; October 31; and November 1, 1978. Substantial amounts of testimony

1. "6–02–05. Acknowledgment of organization certificate—Application for certificate of authority—Notice of hearing.—The organization certificate shall be acknowledged before the clerk of some court of record or a notary public, and, together with the acknowledgment thereof, shall be authenticated by the seal of such court or notary. The same thereupon shall be transmitted to the state banking board with a request for permission to present the same to the secretary of state, with application to him for the issuance of a certificate of authority. Upon receiving such organization cer-tificate, the board shall cause notice of the application therefor to be published in the official newspaper of the county within which such association is proposed to be established. Such notice shall contain a statement of a time when and place where the board will hear such application and shall specify that any person objecting thereto may appear and show cause why such application should not be approved. Upon the consolidation of banks or the conversion of a national bank to a state bank, notice of such hearing need not be given.

were taken regarding both applications—testimony in support of and in opposition to the opening of a new bank in Williston.

The State Banking Board, which supervises the State Department of Banking and Financial Institutions, entered its findings of fact and conclusions of law on April 16, 1979. The judgment of the Burleigh County District Court affirming the decision of the State Banking Board to grant the charter to Williston Basin State Bank was entered on July 12, 1979. We find ample support in the record for the decision of the Banking Board.

Because the two competing applications were received almost simultaneously, the hearings were held concurrently, although separate transcripts were made for each application. The Board, after reviewing the evidence in support of and in opposition to the two applications, found that the Williston trade area was in need of another bank. Accordingly, the Board decided to grant the charter to the Williston Basin State Bank and deny a charter to the Williston State Bank. This decision of the Board's was based on the finding that Williston was in need of only one additional bank and that the proposed capitalization structure of the Williston Basin State Bank was superior to that of the proposed Williston State Bank.

As previously stated, our review of the decision of the Board is governed by Chapter 28–32, N.D.C.C. Section 28–32–21, N.D. C.C., provides as follows:

"*28–32–21. Review in supreme Court.* —The judgment of the district court in an appeal from a decision of an administrative agency may be reviewed in the supreme court on appeal in the same manner as provided in section 28–32–19, except that the appeal to the supreme court must be taken within sixty days after the service of the notice of entry of judgment in the district court."

Section 28–32–19, N.D.C.C., provides as follows:

"*28–32–19. Scope of and procedure on appeal from determination of administrative agency.*—The court shall try and hear an appeal from the determination of an administrative agency without a jury and the evidence considered by the court shall be confined to the record filed with the court. If additional testimony is taken by the administrative agency or if additional findings of fact, conclusions of law, or a new decision shall be filed pursuant to section 28–32–18, such evidence, findings, conclusions, and decision shall constitute a part of the record filed with the court. After such hearing, the court shall affirm the decision of the agency unless it shall find that any of the following are present:

1. The decision or determination is not in accordance with the law.

2. The decision is in violation of the constitutional rights of the appellant.

3. Provisions of this chapter have not been complied with in the proceedings before the agency.

4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions and decision of the agency are not supported by its findings of fact.

If the decision of the agency is not affirmed by the court, it shall be modified or reversed, and the case shall be remanded to the agency for disposition in accordance with the decision of the court."

This court has said on numerous occasions that the State Banking Board is an administrative agency. *Citizens State Bank of Neche v. Bank of Hamilton,* 238 N.W.2d 655, 658 (N.D.1976); *Application of Bank of Rhame,* 231 N.W.2d 801, 806 (N.D. 1975); *First American Bank & Trust Co. v. Ellwein,* 198 N.W.2d 84, 93 (N.D.1972). Upon review, findings made by the Board are entitled to great weight. *Bank of Rhame, supra* 231 N.W.2d at 811. We exercise a three-part review of the factual basis of administrative orders: (1) are the findings of fact supported by a preponderance of the evidence; (2) are the conclusions of

law sustained by the findings of fact; and (3) is the agency decision supported by the conclusions of law? See, generally, Bank of Neche, supra 238 N.W.2d at 660; and Bank of Hamilton v. State Banking Board, 236 N.W.2d 921, 925 (N.D.1975). Prior to July 1, 1977, we used the "substantial evidence" standard in review of administrative agency decisions, but in 1977 the Legislature substituted the "preponderance of the evidence" standard for the "substantial evidence" standard. See Power Fuels, Inc. v. Elkin, 283 N.W.2d 214, 218 (N.D.1979); and Steele v. North Dakota Workmen's Comp. Bur., 273 N.W.2d 692, 697 (N.D.1979).

In Power Fuels, supra, 283 N.W.2d at 220, we stated:

"In construing the 'preponderance of the evidence' standard to permit us to apply the weight-of-the-evidence test to the factual findings of an administrative agency, we do not make independent findings of fact or substitute our judgment for that of the agency. We determine only whether a reasoning mind reasonably could have determined that the factual conclusions reached were proved by the weight of the evidence from the entire record."

In the instant case, the "preponderance of the evidence" in the entire record must support the Board's findings that Williston was in need of a new bank and that the other requirements of § 6–02–06, N.D.C.C., were met. Section 6–02–06, N.D.C.C., provided, at the time of the hearings on the two applications, as follows:

"6–02–06. Hearing by board—Conclusions.—At the time and place stated, and through any sources of information at its command, the board diligently shall inquire whether the place where such banking association is proposed to be located is in need of further banking facilities, whether the proposed association is adapted to the filling of such need, and whether the proposed incorporators are possessed of such character, integrity, reputation, and financial standing as shown by a detailed financial statement to be furnished by them, that their connection with the banking association will be beneficial to the public welfare of the community in which such bank is proposed to be established. The state banking board shall inquire into the qualifications of the management of the proposed bank. Qualifications of management shall include adequate experience, as determined by the board, with financial institutions or other approved related experience. Prior to such hearing, the applicants shall pay to the board such sum as it may designate not exceeding five hundred dollars to defray the cost of investigation and hearing by the board. The board shall hear any reasons advanced by the applicants why they should be permitted to organize the proposed association, and any reasons advanced by any person why such association should not be permitted to be organized. At the termination of such hearing, the board shall make a brief statement in writing of its conclusions, and if it finds that the proposed association should not be permitted to organize, it shall state briefly the reasons why. A copy of such conclusions either shall be endorsed upon or attached to the organization certificate, together with the refusal or grant of permission to the proposed incorporators to present the said organization certificate to the secretary of state. A determination in favor of such organization must be joined in by a majority of all the members of the board."[2]

American State Bank and First National Bank protest the finding of the Board that Williston is in need of a new bank. No objections have been made to any of the other findings made by the Board, in compliance with § 6–02–06, N.D.C.C.

The term "need" is not defined in § 6–02–06, N.D.C.C. The protesting banks argue that the term "need" as used in the

2. The 1979 Legislature amended § 6–02–06, N.D.C.C., and in its present form the statute is identical except that the sentence requiring the applicant to pay a fee to defray the cost of investigation and a hearing has been removed.

statute should be defined as something akin to "absolute necessity". This same argument was presented to the district court. Williston Basin State Bank countered that "need" as the term is used in the banking statute should be defined as whether or not a new bank is economically feasible. We believe that the intention of the Legislature when it used the term "need" in § 6–02–06, N.D.C.C., was to require the State Banking Board to look at all available factors in determining whether or not another banking facility is needed for a given trade area. These factors should be viewed in light of the general purpose of the banking regulations.

We agree with the district court that the Legislature did not intend that an applicant for a new bank charter must show an absolute necessity for a new banking facility in a given trade area. Such a construction of the term "need" would foster monopolies for existing banks and prevent the kind of healthy competition in banking services that is so much in the public interest.

 The general purpose for banking regulations is to protect the public. This encompasses the depositors and creditors of banks specifically, but includes existing banks only to the extent that it protects their depositors and creditors. The banking regulations are not intended to create monopolies for existing banks or to prevent competition in banking. Support for this statement can be found in § 6–01–04, N.D.C.C., which provides, in pertinent part, that "The board shall make and enforce such orders as, in its judgment, may be necessary or proper to protect the public and the depositors or creditors" of financial corporations and institutions.

 Numerous factors should be considered in determining whether or not a need exists for a new banking facility in a given trade area. Economic feasibility of the proposed bank is one of these factors. We believe the following factors set out by the Minnesota Court in *Jackson v. Valley National Bank of Eagan Township*, 277 Minn. 293, 152 N.W.2d 472, 474 (1967), to be used in determining whether or not a "rea-

sonable public demand" for a new banking facility exists should also be considered:

"(1) Number of banks already serving the area in which the proposed bank would locate; (2) size of area; (3) population of area; (4) wealth of residents of area; (5) commercial and industrial development of area; (6) potential growth of area; (7) adequacy of the services being provided by existing banks compared to the needs of residents and the services to be offered by proposed bank; (8) capability of existing banks to handle potential growth of the area; (9) convenience of the location of existing banks to residents of the area as compared to convenience of the proposed bank; (10) size of banks in area; (11) dates when the banks in the area were established; and (12) the number of persons in area who desire to use the proposed bank and the amount of business they would generate."

*See also, Bryan v. Community State Bank of Bloomington*, 285 Minn. 226, 172 N.W.2d 771, 775 (1969).

Other courts have had to interpret similar terms in their statutes which regulate banking. As the previous paragraph indicates, the Minnesota statute requires a finding of "reasonable public demand" for a new banking facility. *Jackson, supra*; and *Bryan, supra*. A Missouri Court, in *Suburban Bank of Kansas City v. Jackson Co. St. Bank*, 330 S.W.2d 183 (Mo.App.1959), in defining the term "convenience and needs of the community" stated:

"There has been no Missouri decision defining the term 'convenience and needs of the community'. The courts of other states have made it clear that the purpose of similar clauses in their banking statutes is not to prevent new banks from entering the field, but rather to insure the existence of a healthy banking system. *This is true, even though existing banks have been rendering adequate service* (Banking Law Journal, Vol. 74, No. 11, Nov. 1957, page 928). Too strict a monopoly in the banking field is regarded as being as undesirable as having an excessive number of banks. The Supreme

Court of South Dakota in construing the term 'public convenience and necessity' contained in its State Banking Act said:

" 'While the adequacy of existing banking facilities may be considered in the determination of public convenience and necessity it does not follow that because there are adequate banking facilities that public convenience and necessity justifying another bank cannot exist. If such were the case the statute would tend to deter competition and foster monopoly.' *Wall v. Fenner*, 1956, 76 S.D. 252, 76 N.W.2d 722, 726. Similarly, the Supreme Court of Michigan in *Moran v. Nelson*, 1948, 322 Mich. 230, 33 N.W.2d 772, 778, said:

" 'If the banking commissioner concluded * * * that plaintiffs' application should be denied because he was of the opinion the existing banking facilities "render complete banking service, both as to commercial service as well as industrial", we think such reason was not alone controlling.' See also *State ex rel. Dybdal v. State Securities Commission*, 145 Minn. 221, 176 N.W. 759.

"One good indication of whether or not the convenience and needs of the community to be served justify the respondent bank is the amount of deposits which the proposed bank would obtain during the first years of its operation. If the deposits and accompanying business of the bank are substantial, then the bank meets the convenience of the community and there is need for the bank.

" 'Insofar as public convenience and advantage is concerned, he (the administrative official charged with the responsibility of granting or denying bank charters) is primarily interested in the amount of deposits which can be generated (usually within three years), the people and the business to be served, the chances of successful operation and the effect on existing financial institutions.' Banking Law Journal, supra, p. 931." [Emphasis in original.]

In *Planters Bank v. Gorrett*, 239 Miss. 248, 122 So.2d 256 (1960), the Mississippi Supreme Court was faced with the question of whether or not the "public necessity" required that a proposed new bank should be chartered and permitted to operate. The court in *Planters, supra* 122 So.2d at 269, stated:

"The statute which we have under review was enacted in the exercise of the police power of the state, in the interest of the public, and as an aid to insure safe banking. Its purpose is not to deter competition or foster monopoly, but to guard the public and public interests against imprudent banking. By the enactment of the statute, the Legislature, in our opinion, did not intend that one or more established banks may keep out another merely because the banking facilities sufficiently take care of the banking business. The applicants for a charter were not required to show that the existing bank was not rendering adequate service to its customers, or that a new bank would be in a position to render better service to the public than the bank already in existence."

Although the terms used in the above-mentioned decisions vary somewhat from the term "need" used in § 6–02–06, N.D.C.C., there seems to be a common thread running through all of the decisions. Such thread is that the purpose of banking regulations is not to foster monopolies, but to promote and ensure safe and healthy banking operations and to protect the public generally. We conclude that the actions of the State Banking Board in granting a charter to the Williston Basin State Bank were consistent with that purpose.

The record in the instant case is voluminous. There are thirteen volumes of the transcript of testimony: six volumes in support of the Williston Basin State Bank application, five volumes in support of the Williston State Bank application, and two volumes in opposition to both applications.

Examination of the record reveals that the Board considered every conceivable factor in determining whether or not Williston was in need of a new bank. The Board found that the trade area of the Williston

Basin State Bank includes Williams County and portions of Divide and McKenzie Counties. The Board found that Williston is the only community of its size in North Dakota served by only two commercial banks and that the population-per-bank-ratio is 5,682 to 1, compared with a statewide population-per-bank-ratio of 3,805 to 1. The Board also found that Williston is a rapidly growing and prosperous community and a center for the recent resurgence in oil exploration and production in North Dakota. The Board also found that the choice of a location for the Williston Basin State Bank is convenient to the public and is in an area likely to experience continued growth. Suffice it to say that the finding that Williston was in need of a new banking facility has ample support in the record and is supported by a preponderance of the evidence. The only testimony to the contrary consists in large part of self-serving statements by directors and officers of existing financial institutions in Williston.

▆▆▆▆ The second issue raised on appeal is whether or not the withholding as confidential of portions of the applications regarding personal financial statements of the incorporators of the proposed banks from counsel for the protesting banks constituted reversible error. We hold that there was no reversible error committed in withholding such information.

At the time that these hearings were held, the State Banking Board had a policy of keeping financial information of incorporators confidential. First National Bank argues that this policy should have been formally promulgated as a rule, pursuant to authority granted to the Board under §§ 6–01–04 and 28–32–02, N.D.C.C.,[3] and should have been published in the North Dakota Administrative Code pursuant to § 28–32–03(1), N.D.C.C., which provides as follows:

*"28–32–03. Filing of rules and regulations—Effect of rules.*

1. A copy of each rule and regulation promulgated and adopted by an administrative agency shall be filed in the office of the attorney general, and when filed, shall have the force and effect of law until amended or repealed by the agency or until the same is declared invalid by a final court decision. A copy of each rule and regulation adopted by any administrative agency, and the attorney general's opinion thereon, shall also be filed in the office of the legislative council prior to final printing or duplication by an agency. Each administrative agency extensively amending or revising its rules and regulations after July 1, 1977, as determined by the office of the legislative council, shall submit such rules and regulations in the proper format, style, and arrangement prescribed under subsection 3 for publication in the North Dakota Administrative Code. Extensive amendments or revisions of administrative rules and regulations shall be published in the administrative code by the office of the legislative council as soon as practicable af-

---

**3.** Section 6–01–04, N.D.C.C., provides, in pertinent part:

"*6–01–04. Powers and duties of the state banking board and state credit union board.*—The board shall have power to make such rules and regulations for the government of financial corporations mentioned in section 6–01–01 as in its judgment may seem wise and expedient, but such rules and regulations shall not conflict with any law of this state or of the United States. The board shall review all reports made by the financial corporations and institutions under its jurisdiction and all reports of regular and special examinations thereof made by the state examiner, and shall approve or disapprove such reports. The board shall make and enforce such orders as, in its judgment, may be necessary or proper to protect the public and the depositors or creditors of said financial corporations and institutions.

"28–32–02, N.D.C.C., provides, in pertinent part:

"*28–32–02. Rulemaking power of agency.* Every administrative agency shall have the authority to promulgate, and from time to time amend or repeal, reasonable rules and regulations in conformity with the provisions of any statute administered or to be administered, enforced or to be enforced, by such agency, and to prescribe methods and procedure required in connection therewith. . . ."

ter submission by an agency. Prior to July 1, 1978, all administrative agencies shall revise their rules and regulations not previously published in the administrative code for publication in the administrative code. After July 1, 1978, rules and regulations not published in the administrative code shall be invalid."

The argument is that if this information were available the protesting banks would have had an opportunity to cross-examine the incorporators as to the information supplied. It is conceded that the same information was available to the Board, the district court, and this court. The confidential information is also available to the F.D.I.C. inspectors and one of the conditions of the granting of the charter was that the proposed bank obtain F.D.I.C. insurance.

This court agrees that administrative agencies should act in accordance with policies formally promulgated pursuant to authority delegated to them by the Legislature. This is especially true in cases like the instant case where the "informal policy" followed did not comport with the open records statute, § 44–04–18, N.D.C.C., which provides as follows:

> "44–04–18. Access to public records—Penalty.—
>
> 1. Except as otherwise specifically provided by law, all records of public or governmental bodies, boards, bureaus, commissions or agencies of the state or any political subdivision of the state, or organizations or agencies supported in whole or in part by public funds, or expending public funds, shall be public records, open and accessible for inspection during reasonable office hours.
> 2. Violations of this section shall be punishable as an infraction."

However, we fail to see how the refusal to disclose this information would constitute prejudicial error. The very same information was available to and was considered by the Board in making its determination whether or not to grant a charter to the Williston Basin State Bank.

We are also cognizant of the fact that even if we were to find reversible error and remand for a new hearing, the information would be confidential under § 6–01–07.1, N.D.C.C., and could only be obtained pursuant to § 6–01–07, N.D.C.C. Section 6–01–07, N.D.C.C., was amended by the 1979 Legislature [S.L.1979, ch. 115, § 1]; and § 6–01–07.1, N.D.C.C., was created by the 1979 Legislature [S.L.1979, ch. 116, § 1]; and these actions by the Legislature are, therefore, indicative of a legislative intent that such information should properly be kept confidential.

Because we conclude that the findings of the State Banking Board are supported by the preponderance of the evidence and because we find no prejudicial error, the judgment of the district court affirming the decision of the State Banking Board granting a new bank charter to the Williston Basin State Bank, is affirmed.

ERICKSTAD, C. J., and PEDERSON, VANDE WALLE and SAND, JJ., concur.