STATE BANK OF FARGO, Plaintiff
and Appellant,

v.

DAKOTA BANK AND TRUST CO. and
State Banking Board of North Dakota,
Defendants and Appellees.

Civ. No. 9903.

Supreme Court of North Dakota.

May 12, 1981.

Tenneson, Serkland, Lundberg, Erickson & Marcil, Fargo, for plaintiff and appellant; argued by Ronald H. McLean, Fargo.

Lamb, Schaefer, McNair, Larson & Olson, Fargo, for defendant and appellee Dakota Bank and Trust Co.; argued by Scott E. Boehm, Fargo.

Robert O. Wefald, Atty. Gen., Bismarck, for defendant and appellee State Banking Bd. of North Dakota; argued by Daniel Hovland, Asst. Atty. Gen.

ERICKSTAD, Chief Justice.

The appellant, State Bank of Fargo, appeals from a judgment entered by the District Court of Burleigh County affirming a decision of the State Banking Board of North Dakota which granted the application of Dakota Bank and Trust Company to establish a drive-in and walk-up banking facility in Fargo, N. D.

On November 30, 1979, Dakota Bank filed an application with the State Banking Board asking that it be granted authority to establish a drive-in, walk-up facility on the northside of Fargo. The Board held hearings on the application on January 22, 1980, and February 27, 1980. Representatives of the State Bank of Fargo (State Bank) and Union State Bank appeared at the hearings and protested the application. The Board granted the application on May 8, 1980. State Bank then appealed the decision of the Board to the District Court of Burleigh County which affirmed the Board's decision. State Bank raises the following issues in its appeal to this court:

(1) Whether or not the State Banking Board of North Dakota and the district court erred by permitting Dakota Bank and Trust Company a second separate facility within Fargo, North Dakota.

(2) Whether or not the finding made by State Banking Board and affirmed by the district court that the needs and welfare of the residents of Fargo's northside would be served by the proposed facility is supported by the preponderance of the evidence.

### I. Standard of Review

Our standard of review was set out in *American State Bank, etc. v. State Banking*, 289 N.W.2d 222 (N.D.1980), as follows:

"This court has said on numerous occasions that the State Banking Board is an administrative agency. Upon review, findings made by the Board are entitled to great weight. We exercise a three-part review of the factual basis of administrative orders: (1) are the findings of fact supported by a preponderance of the evidence; (2) are the conclusions of law sustained by the findings of fact; and (3) is the agency decision supported by the conclusions of law? Prior to July 1, 1977, we used the 'substantial evidence' standard in review of administrative agency decisions, but in 1977 the Legislature substituted the 'preponderance of the evidence' standard for the 'substantial evidence' standard.

"In *Power Fuels, supra,* 283 N.W.2d 214, at 220, we stated:

'In construing the "preponderance of the evidence" standard to permit us to apply the weight-of-the-evidence test to the factual findings of an administrative agency, we do not make independent findings of fact or substitute our judgment for that of the agency. We determine only whether a reasoning mind reasonably could have determined that the factual conclusions reached were proved by the weight of the evidence from the entire record.' " 289 N.W.2d at 225–26. (Citations omitted.)

### II. Approval of Conversion Facility

State Bank argues that the Board erred when it approved a second separate facility for Dakota as Dakota already had a separate facility on the southside which, it asserts, was improperly approved as a paying and receiving station (P&R) when Dakota converted from a national bank to a state bank. State Bank contends that, because the southside facility was improperly approved as a P&R and is in reality a separate drive-in facility, it was error for the Board to approve the second drive-in facility as state law prohibits any bank from maintaining more than one drive-in facility. § 6–03–13.2, N.D.C.C. State Bank asserts that pursuant to *Minnkota Power Coop. v. Lake Shure Prop.,* 289 N.W.2d 230 (N.D. 1980), it should be allowed to collaterally attack the prior approval of the southside P&R as the Board did not follow the statutory procedure for approving the establishment of P&R stations.

In *Minnkota Power,* the power company sought an injunction to enjoin landowners from interfering with the upgrading of an existing power line. We reversed as the Public Service Commission did not give the notice of a hearing as required by statute and thus failed to comply with the statutory requirements in the prior waiver hearing. The case was remanded with instructions permitting the power company to

make application for a new hearing. 289 N.W.2d at 234. In this case, however, there were not any statutory defects in the procedure the Board employed when it approved the conversion of Dakota from a national to a state bank.

Dakota, when it was a national bank, received approval for a P&R station in 1962 from the Comptroller of Currency. The federal law provided that a P&R could be established as allowed by state law. 12 U.S.C., § 36(c). State law at that time allowed a P&R in any "community" not having any other banking facilities. *See,* former § 6–03–14, N.D.C.C. The Comptroller considered the southside of Fargo as a separate community and authorized Dakota's P&R in that location.

In 1963, Section 6–03–14 was amended to read city, town, or village instead of community. The statute provides, however, that the "limitation shall not apply to any banking institution which has already received a permit for the construction of such a receiving and paying station." § 6–03–14, N.D.C.C.[1] (Section 6–03–14 was also amended by the 1979 legislature but the applicable language was not affected.) Dakota legally operated the southside facility as a P&R from the period of its inception until 1979.

On July 1, 1979, Dakota converted from a national bank to a state bank pursuant to Section 6–03–13.5, N.D.C.C. This section provides:

"*6–03–13.5. National bank conversion to state bank.*—A national bank located in this state which follows the procedure prescribed by federal law to convert into a state bank, shall be granted a state charter if it meets the provisions of the

North Dakota Century Code for the incorporation and chartering of a new state bank. Any requirement that shares must be paid in cash may be satisfied by the exchange of shares of the converted state bank for those of the converting national bank, which may be valued at no more than their fair cash market value. *The procedure for incorporation of a state bank may be modified to the extent made necessary by the difference between an ordinary incorporation and a conversion."* (Emphasis added.) § 6–03–13.5, N.D.C.C.

State Bank asserts that this requires Dakota to be treated as a "new" bank subject to the laws in existence in 1979 and hence the "grandfather clause" of Section 6–03–14 would not be applicable if the P&R were to be approved as a "new" P&R and, as there are other banking institutions within the city of Fargo, Dakota could not be granted authority to "establish" a new P&R station. We do not agree.

Section 6–03–13.5 does not require the converting bank to be treated as a new bank. Section 6–03–13.5 requires that converting banks meet the "provisions of the North Dakota Century Code for the incorporation and chartering of a new state bank." The procedure may be modified to the extent made necessary by the difference between an ordinary incorporation and a conversion. § 6–03–13.5, N.D.C.C. In fact the procedure is expressly modified by Section 6–02–05, N.D.C.C., which provides that upon "conversion of a national bank to a state bank, notice of such hearing need not be given." § 6–02–05, N.D.C.C.

In this case, however, notice that the conversion would be considered by the

1. "*6–03–14. Paying and receiving stations authorized.* Any banking institution may establish and maintain within the county in which the home office of the applicant banking institution is located, or in any adjoining county, or in any other county provided the location of the community to be served is within a thirty-five mile [56.33 kilometer] radius of the home office, subject to the approval and supervision of the state banking board, a receiving and paying station in any city organized under the laws of this state, or in any unincorporated townsite located within the limits of any Indian reservation, not having an established banking institution located therein. Provided, however, this limitation shall not apply to any banking institution which has already received a permit for the construction of such a receiving and paying station. No additional capital shall be required for the operation of the station. This section shall not be construed as committing this state in any manner to a policy of permitting branch banking." § 6–03–14, N.D.C.C.

Board at its regular meeting on April 16, 1979, in Bismarck, North Dakota, was sent to State Bank. The notice contained the following heading:

"In the Matter of the Application for Permission to Convert Dakota National Bank and Trust Co. of Fargo, a National Banking Association exercising trust powers located in Fargo, North Dakota, *with a Paying and Receiving Station at 1815 South University Drive*, Fargo, North Dakota, to a State Banking Association exercising trust powers to be Known as Dakota Bank and Trust Co. of Fargo, Fargo, North Dakota." (Emphasis added.)

This notice specifically alerted all that Dakota Bank with a P&R was seeking authority to convert to a state bank. The body of the notice dealt with those issues required to be considered by Section 6–02–06, N.D. C.C. The final paragraph of the notice states:

"YOU ARE FURTHER NOTIFIED that the Board invites comment on the issues specified and on any other matter relevant or material to the question of a National Banking Association converting to a State Banking Association. Comments must be received by April 15, 1979."

State Bank did not oppose the conversion or offer any comments to the Board when it considered Dakota's application to convert. State Bank asserts that the notice it received was insufficient under Section 6–03–16, N.D.C.C. (the statute which deals with establishing P&R stations), that no hearing was held by the Board specifically dealing with Dakota's P&R and, therefore, the procedure was deficient and thus the case should be remanded pursuant to *Minnkota Power Coop. v. Lake Shure Prop., supra*, 289 N.W.2d 230.

Sections 6–03–14 to 6–03–19 deal with the establishment, operation and discontinuance of P&R stations. In this case, the P&R had been approved and established in 1962 and legally operated until 1979. When Dakota converted to a state bank, it was

not seeking to establish a "new" P&R station. The Legislature recognized the difference between establishing a new state bank and converting a national bank to a state bank when it provided for a modification of procedure in conjunction with such conversion. In this case, the Board modified the procedure by permitting the conversion of Dakota, including the established P&R station, as a unit. Notice of this fact was sent to State Bank although notice was not required. § 6–02–05, N.D.C.C. State Bank chose not to respond or contest the conversion at that time. The conversion procedure employed by the Board not only complied with the statutory requirements, it went beyond such requirements and gave notice of the conversion even though such notice was not required. In our view, there was no need for a hearing on the propriety of continued operation of the southside P&R as it is permitted under the "grandfather" clause of Section 6–03–14, N.D.C.C.[1] Dakota was a banking institution which had received a permit to establish a P&R and had operated that P&R continuously to the date of conversion to a state bank. § 6–03–14, N.D.C.C.

▮ Considering the authority in the Board to modify the procedure, there were no procedural defects in the conversion procedure employed by the Board when it permitted the conversion of Dakota and its P&R from a national to a state bank. Thus, State Bank cannot now collaterally attack the conversion.

### III. Approval of Drive-in Facility

The Board granted Dakota the authority to establish a northside drive-in facility. State Bank appealed to the District Court of Burleigh County which affirmed the Board's decision. State Bank now appeals to this court and asserts that a preponderance of the evidence does not support the Board's findings that the northside facility will serve the needs and welfare of the northside residents and that the facility will not seriously injure any other banks.

Section 6–03–13.3 in pertinent part states:

1. See note 1 on page 663.

"In determining whether or not to approve the application for such facility, the banking board shall take into consideration the following facts:

    1. The convenience, needs and welfare of the people of the community and area served;

    2. The financial strength of the bank in relation to the cost of establishing and maintaining such separate facility; and

    3. Whether other banks will be seriously injured by the approval of the application." § 6–03–13.3, N.D.C.C.

State Bank only contests the Board's findings relative to 1 and 3.

As earlier stated, our review is in three parts: (1) are the findings of fact supported by a preponderance of the evidence; (2) are the conclusions of law sustained by the findings of fact; and (3) is the agency decision supported by the conclusion of law. *American State Bank, etc. v. State Banking, supra,* 289 N.W.2d at 225–26.

██ The Board's relevant findings of fact are as follows:

## "VIII.

"That the alley through which the drive-in lanes exit is presently used to service certain retail business establishments in the area as well as a delivery entrance for a hotel, bar and barber shop; and that the alley also serves for entry and exit from Dakota Bank's employee parking.

## "IX.

"That traffic is heavily congested in Fargo generally, and in the vicinity of Broadway and NP Avenue as well as 5th Street between NP Avenue and 1st Avenue.

## "X.

"That presently the drive-in facilities of the Dakota Bank and Trust Co. of Fargo at its main banking house are over taxed; that very often customers using those facilities are required to wait some time for service and experience delays when exiting the facilities through the alley to 5th Street.

## "XI.

"That as of November 30, 1979, Dakota Bank and Trust Co. of Fargo had 1,800 business and personal demand accounts, and 2,900 savings and savings certificate customers from the area north of Main Avenue in Fargo.

   *    *    *    *    *    *

## "XV.

"That the proposed drive-in, walk-up facility would be located in the northwest quadrant of the city, six blocks south of North Dakota State University's campus and in an area of the city that has substantial commercial and industrial development as well as middle and low income residential neighborhoods; that there is presently no bank, paying and receiving station, or drive-in, walk-up facility of any bank located in this quadrant, the only banking service located there being an electronic fund transfer station at a supermarket courtesy counter.

## "XVI.

"That Union State Bank was organized in 1972 and its main office is located on 13th Avenue South near 38th Street West approximately four miles from the facility proposed by applicant herein; and that the State Bank of Fargo is located on Broadway at 27th Avenue North, approximately two and one-half miles from the facility proposed by applicant herein; that neither Union State Bank nor State Bank of Fargo will be seriously injured by the establishment of such a facility, and no other bank will be seriously injured by the establishment of such a facility."

State Bank asserts that Dakota's facility is simply a means of gaining new accounts from the northside. It presents no specific evidence which shows that any bank will be seriously injured. The factor to be con-

**666**

sidered is not whether or not other banks will lose new accounts to the institution seeking the facility and thus be "hurt"; the issue is whether or not other banks will be "seriously injured." The only evidence presented was that Union State Bank has failed to show a profit in the last eight years. The offices and facilities of Union State Bank are four miles from the proposed Dakota facility. No specific evidence was presented to show how Union State Bank or any other banking institution will be seriously injured.

■ A preponderance of the evidence also supports the Board's findings that the facility will serve the convenience, welfare and needs of the residents of the northside. The evidence reveals that there is only one full service bank on the northside, located two and one-half miles from the proposed facility, the facility will be located in a middle to low income area in which the residents have limited mobility as most families have either one or no automobile and the northside is a rapidly growing industrial, commercial and residential area.

The findings are supported by the preponderance of the evidence at the hearing. These findings support the following relevant conclusions of law made by the Board:

"III.

"That Dakota Bank and Trust Co. of Fargo does not now operate a separate facility for drive-in and walk-up banking services.

"IV.

"That the establishment and operation of a separate facility for drive-in and walk-up banking services at the proposed location in north Fargo, by Dakota Bank and Trust Co. of Fargo, will serve the convenience, needs and welfare of the people of Fargo generally and of north Fargo in particular.

"V.

"That the financial condition of Dakota Bank and Trust Co. of Fargo is suffi-

ciently strong in relation to the cost of establishing and maintaining such facility that the establishment and maintenance of such separate facility will not be an undue financial burden to the bank.

"VI.

"That no other banks will be seriously injured by the approval of the application of Dakota Bank and Trust Co. of Fargo to establish, maintain and operate a separate facility for drive-in and walk-up services."

■ Finally, these conclusions support the decision of the Board to grant Dakota the authority to establish a drive-in facility. Therefore, the judgment of the District Court affirming the decision of the Board is affirmed.

VANDE WALLE, PEDERSON, PAULSON and SAND, JJ., concur.